UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                          Case Nos. 18-20615, 22-20329

v.                                          Hon. Bernard A. Friedman

JAVAR CLARKE,

        Defendant.
_____/

**OPINION AND ORDER DENYING MOTION TO REDUCE SENTENCE**

This matter is before the Court on a motion for sentence reduction filed *pro se* by defendant Javar Clarke. (ECF No. 14).[1] The government has not filed a response and the time to do so has expired. The Court does not believe oral argument will aid in the resolution of the motion and shall not hold a hearing. E.D. Mich. LR 7.1(f)(1). For the reasons that follow, the motion is denied.

In 2022, Clarke pled guilty to charges of bank robbery and using or carrying and brandishing a firearm during and in relation to a crime of violence. He was sentenced in August 2023 to a total of 204 months imprisonment. (ECF No. 12). Clarke now moves for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i).

---

[1] Identical motions were filed in Case No. 22-cr-20329, (ECF No. 14), and Case No. 18-cr-20615, (ECF No. 89). Unless otherwise noted, all docket entry references in this Opinion are to Case No. 22-cr-20329.

1

(ECF No. 14). Under that provision, the Court "may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) . . . if it finds that – (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).[2]

Clarke urges that reducing his sentence now "would not diminish the seriousness of the offense or undermine his original sentence" because he "has already paid a substantial price for his malfeasance and no further justice would be served in keeping him imprisoned." (ECF No. 14, PageID.236). He states that he "is now moving in the right direction in his life" and that he "has more than paid his dues" through his "long enough incarceration," which, he says, "is a sufficient penalty for him and a sufficient . . . deterrent for other people." (*Id.*, PageID.236-37).

---

[2] The provision also states that such a motion may only be brought "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, Clarke indicates in his motion dated December 29, 2023, that he "filed with the Warden electronically in December 2023 and has yet to receive a response." (ECF No. 14, PageID.234). Logistically, 30 days could not have passed between the warden's receipt of his request and the filing of his motion. Moreover, such an assertion without citation or other documentation is generally insufficient to demonstrate that all administrative remedies have been fully exhausted. The motion could be denied on this basis alone. The Court also finds the motion substantively unpersuasive, however, and will additionally deny it on the merits.

He offers several points in support of his motion. Clarke points out that before and during the instant offense, he was abusing drugs and alcohol and had recently been traumatized by the mother of his child attempting to drown the child in the bathtub. (*Id.*, PageID.238-39). He states that he "would have greatly benefited from a mental competency exam during this case, which was never mentioned." (*Id.*, PageID.239). Similarly, he urges that "[d]iminished capacity was a mitigating factor because Mr. Clarke acted under seriously reduced mental capacity." (*Id.*, PageID.242). Next, Clarke states that he "was sentenced harshly and unjustly" and provides a list of individuals who, he says, "have the same charge as Mr. Clarke [but] received significantly lower sentences than him." (*Id.*, PageID.245). Clarke goes on to assert that his family circumstances qualify him for a sentence reduction. He states that his two youngest children, who are developmentally disabled, have been returned to the custody of their "unfit" mother following a "bungled" case by Child Protective Services. (*Id.*). As to his 14-year-old twins, he asserts that they are "being raised by his Aunt" but that they "are getting involved with guns and the 'street life'" and that he wants "to be in their lives to make sure to put a stop to that immediately." (*Id.*, PageID.245-26). He states that he "has an excellent home plan" and anticipates attending "the TORI Reentry Program in Dallas, Texas" upon release. (*Id.*, PageID.247). Along the same lines, he states that he already has employment lined up, plans to seek custody of all four of his children, and is

3

supported by his family and "two very supportive and loving sponsors." (*Id.*, PageID.248). In terms of rehabilitation, Clarke urges that because he has been in a "Federal Holdover" not many classes have been available to him but that he plans to get permission to start his own program called "Becoming A Mature Adult" and that he has gotten on the waitlist for many upcoming classes as well as received certificates for a number of programs. (*Id.*, PageID.248-49). Finally, Clarke raises the issue of ineffective assistance of counsel, asserting that "he was not afforded the opportunity to present testimony to the court during portions of the proceedings." (*Id.*, PageID.250). He states that his counsel "just went through the motions and did not try to discredit anything that the Government brought before the court, when Mr. Clarke clearly told him things were incorrect." (*Id.*). Clarke asks the Court to terminate his sentence or place him on home incarceration for the remainder of his time. (*Id.*, PageID.252).

None of the issues Clarke raises persuade the Court that a sentence reduction would be appropriate at this time. His mental health and recently experienced trauma were discussed at length during sentencing and the Court took those issues into consideration when crafting Clarke's sentence. Furthermore, the Sixth Circuit has already declared that "facts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence." *United States v. Hunter*, 12 F. 4th 555, 570 (6th Cir. 2021).

The same problem plagues Clarke's assertion of sentencing disparities between himself and other individuals who, according to Clarke, were prosecuted under the same charge but received significantly lower sentences. (ECF No. 14, PageID.245). He provides no citation, case number, or even dates that would allow the Court to verify the accuracy of his assertion. Even assuming the veracity of the statement, disparities that existed at the time that Clarke was sentenced cannot now constitute an "extraordinary and compelling reason" to justify early release. *Hunter*, 12 F.4th at 571. And "even if the sentence disparity did not exist at the time [Clarke] was sentenced, subsequent leniency in another defendant's case says nothing about how [Clarke's] personal circumstances have changed since he was sentenced." *Id.* at 571-72.

As to his family situation, the Court acknowledges that the Sentencing Commission's recently amended policy statement expanded the circumstances that could constitute an "extraordinary and compelling reason." Of particular relevance here, the amended policy statement lists the following family circumstances:

> (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

5

> (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3). The Court is sympathetic to the reality that Clarke's incarceration impacts not just him but his but his broader family and social networks. However, as indicated during the sentencing hearing, the Court is also mindful that Clarke's crimes will have a generational impact on his victims, too. Here Clarke asserts that the mother of his youngest children, both of whom have special needs, regained custody after Child Protective Services "bungled the case." (ECF No. 14, PageID.245). Although he asserts that she is "unfit," other than his dissatisfaction with the apparent processing of the case Clarke has given the Court has no basis upon which to conclude that an inappropriate result was reached in the custody dispute. (*Id.*). Nor has he shown that he is the only available caregiver for the young children. With regard to his teenage twins, Clarke states that they are being raised by his Aunt but are "getting involved with guns and the 'street life.'" (*Id.*, PageID.245-46). He does not assert that his Aunt has become incapacitated, only that they would benefit from his presence to get them on the right track. And with regard to the statement that "[h]is mother lives with his sister because she has

6

Lupus," again Clarke does not demonstrate that he would be the only available caregiver for his family. (*Id.*, PageID.248). In sum: the Court regrets the impact that Clarke's sentence is having and will continue to have on his family but does not find an extraordinary and compelling reason to justify early release based on the information presented here.

The Court commends Clarke for his efforts to set up a "home plan" and to make arrangements for his reintegration into society upon his eventual release. *See* (ECF No. 14, PageID.247-48). But such a "home plan" reflects prudence, not an "extraordinary and compelling circumstance." And as to his existing efforts at rehabilitation, the Court again encourages Clarke to continue to make use of the classes, programs, and services offered to him. But the Court has already rejected his other arguments and Congress has made clear that rehabilitation alone cannot constitute an extraordinary and compelling reason. 28 U.S.C. § 994(t).

Finally, Clarke raises a concern that he received the ineffective assistance of counsel. (ECF No. 14, PageID.250-51). Although he might conceivably raise that in a direct appeal or in a petition for writ of habeas corpus, a motion for sentence reduction is not the appropriate vehicle to address that issue. And even if it were, Clarke's brief remarks, without any specificity or documentation, fall far short of establishing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," let alone that "the

7

deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Clarke has not identified any extraordinary and compelling reason that would justify a modification of his sentence at this time. Accordingly, it is hereby,

ORDERED that the motion for sentence reduction in 22-cr-20329, (ECF No. 14), as well as the motion for sentence reduction in 18-cr-20615, (ECF No. 89), are DENIED.

**SO ORDERED.**

Dated: March 21, 2024
Detroit, Michigan

s/Bernard A. Friedman
Bernard A. Friedman
Senior United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on March 21, 2024.

Javar Clarke #56872-039
FCI Coleman
P O BOX 1032
Coleman, Fl 33521

s/Johnetta M. Curry-Williams
Case Manager

8